# CHARLESTON

GRIFFIN *et al.* v. RUNNION *et al.*

Submitted June 23, 1914.　Decided June 30, 1914. ·

1. EVIDENCE—*Parol Evidence—Written Contract.*

　　A paper writing by which the owners of a horse bind themselves to sell him, at a certain price, to persons who signed it as subscribers and delivered it to the vendors, before the horse was

delivered to them, is deemed in law to be the exclusive evidence of the contract of sale, and cannot be altered or varied by parol evidence. (p. 644).

2. SAME.

Slight departures therefrom in respect to the price and mode of payment, in carrying it into effect, do not abrogate or impair provisions thereof, relating to other things, nor let in parol evidence to alter or enlarge them. (p. 644).

3. SALES—*Implied Warranty.*

In the sale of a stallion, there is no implied warranty of his capacity for procreation. (p. 645).

Error to Circuit Court, Roane County.

Action by G. G. Griffin and others against Andrew J. Runnion and others. Judgment for plaintiffs, and defendants bring error.

*Reversed and Remanded.*

*Harper & Baker,* for plaintiffs in error.

*Pendleton, Mathews & Bell,* for defendants in error.

POFFENBARGER, JUDGE:

This writ of error goes to a judgment for the sum of $1200.00, in an action of asumpsit upon a warranty of soundness, health and foal-getting capacity of a stallion, sold by the defendants to the plaintiffs, at the price of $1800.00. The verdict was for $1500.00, but the plaintiffs remitted $300.00 thereof, reducing it to $1200.00.

The declaration, in five counts, charges the warranty in general terms, as an implied one, and also in special terms as an express one, and the evidence admitted and instructions given are as broad as the declaration itself. The existence of any implied warranty is denied by the defendants, and they further insist that a certain writing, in which there is no express warranty, is the sole repository of the agreement and the exclusive evidence thereof, and cannot be altered or broadened by resort to oral evidence.

The written instrument relied upon as the complete and exclusive evidence of the contract reads as follows:

"Spencer, W. Va. March 14, 1911. The Imported Perch-

eron Horse Co., of Spencer W. Va. agrees to sell to the undersigned subscribers their Imported Percheron Stallion Fraiseur French No. 68629 American No 51293, for the sum of $1800.00 at $200 per share. On the following terms. 1/3 to be paid August 1st 1912. 1/3 to be paid August 1st 1913. 1/3 to be paid August 1st 1914. With interest at 6% from date until paid.

| Subscribers | No. Shares |
|---|---|
| W. H. Harless | 1 |
| B. Truman | 2 |
| J. J. Bailey | 2 |
| W. V. Haverty | 1 |
| S. E. Walker | 1 |
| G. G. Griffin | 2" |

The horse was not delivered until about ten days after the date of this paper. On the occasion of his delivery, all of the subscribers except Bailey were present and inspected him. No other writing was executed except notes by some of the subscribers. Part of them paid in cash and the others gave their negotiable notes for the portions of the purchase money they expected to pay. The vendors A. J. Runnion, W. W. Schwender and J. M. Schwender, partners doing business as The Imported Percheron Horse Company, at Spencer, W. Va., had owned the horse for about two years. They claimed, and adduced evidence to prove, the capacity and efficiency of the horse as a breeder, while they owned him, and admit their representation of that fact to the vendees in the negotiation of the sale. The vendees, however, went further and charged the vendors with having orally guaranteed efficiency to the extent of eighty per cent. The alleged representations, relied upon as evidence of an express warranty, are said to have been made at or before the date of the execution of the paper above quoted, and also on the occasion of the delivery of the horse.

After the delivery of the horse, the vendors retained the paper signed by the vendees and produced it upon the trial of the action, in resistance of the alleged warranty. It was signed by all of the vendees, before the horse was delivered, and the delivery was made by way of execution of the agree-

ment to sell. The paper, therefore, is not a mere bill of sale or receipt. Though not signed by the vendors, it sets forth all of the elements of a complete contract, to sell a horse, upon certain terms and without warranty as to soundness or suitableness for any particular purpose, and so differs widely in character from the paper involved in *Person* v. *Henderson*, 21 N. H. 224, 53 Am. Dec. 185, which was nothing more than a receipt delivered after the horse had been sold. That decision is not applicable here as a precedent. Nor does *Morrow* v. *Bailey*, 2 W. Va. 326, sustain the position of the plaintiffs, as to the character of the contract. The issue in that case was one of fraudulent procurement. In such case, the action is not on the contract. It is for injury wrought by fraud and deceit, when relied upon by the plaintiff. Here the contract as written and signed determines the rights of the parties, unless it was fraudulently procured, for it embodies all of the elements of a complete contract, and cannot be considered as a mere memorandum of a previously made and executed sale. The addition of an express warranty, by parol evidence, is forbidden by the great weight of authority. Jones on Evidence, sec. 441; *Electric Storage &c. Co.* v. *Waterloo &c. Railroad Co.*, 19 L. R. A. (N. S.) 1183; *Leitz* v. *Refrigerating Machinery Co.*, 141 U. S. 510; *Dewitt* v. *Berry*, 134 U. S. 306; *Johnston* v. *Mendenhall*, 9 W. Va. 112; *Iron Works Co.* v. *Miller Supply Co.*, 68 W. Va. 519.

Breach of waranty and fraud in the procurement of a contract are by no means identical. They constitute separate and distinct causes of action. The warranty, when it exists, is a part of the contract. Fraud and deceit are mere wrongs affording ground of relief from contracts or of actions for damages.

Slight modifications of the agreement, or departures therefrom in the execution thereof, did not change its general character. A reduction of $200.00 in the price of the horse was made on account of his leanness and appearance, and some of the notes for purchase money did not conform to the contract with reference to dates of their maturity. Concessions or departures of this character cannot be regarded as an abolition of the contract signed by the parties or the making of

a new one. From them, no presumption of intent wholly to abandon it or to treat it as a mere memorandum or incomplete contract so as to let in parol evidence of additional terms, can arise. It was neither surrendered nor cancelled.

Nor can parol evidence be received to prove the parties, in signing it, regarded it as only a memorandum and not a contract. It speaks for itself and its terms give it the character of a contract. The admission of such evidence would allow contradiction of its terms, in violation of the rule against variation of written contracts by parol proof.

In such sales as this, there is no implied warranty of capacity. The continuance of the virility of a stallion is necessarily conjectural and liable to interruption or termination by causes that cannot be foreseen. A mechanical article or instrument, made of materials of known strength and duration and fabricated by known workmanship and methods is entirely different. So are vegetable products grown by the seller. These are all inanimate, material things, the qualities and characteristics of which are susceptible of accurate knowledge. The future capacity of a horse or other animal depends upon his health, and that is subject to impairment by innumerable diseases incident to life. 15 Am. & Eng. Ency. L. 1237; *McQuaid* v. *Ross*, 85 Wis. 492; 39 Am. St. 864; *White* v. *Stelloh*, 74 Wis. 435; *Scott* v. *Renick*, 1 B. Mon. 63.

Much of the evidence admitted to prove an express warranty might be admissible, in an action of trespass on the case, as evidence of fraud and deceit, working injury to the plaintiffs, but the court should have rejected it, when offered in this case, for reasons already stated. If the representations made were known to be false, the deceit practiced by means thereof was a tort, a wrong, for redress of which the remedy is a tort action. Assumpsit proceeds upon contract and all the counts of the declaration allege contracts of warranty. A warranty is not a mere representation. It is a contract of guaranty or indemnity. In it, knowledge or ignorance of the fact or condition to which it applies is immaterial. Had one been made as part of the contract here involved, the former condition of the horse would be immaterial and the defendant would be liable, whether the incapacity was of antece-

dent or subsequent origin. But, in an issue of fraud, this difference would be vital and controling, for, if antecedent and known, the representation was false and fraudulent, but not, if it was subsequent.

From these conclusions, it follows that the trial court erred in giving instructions Nos. 1, 2, 3, and 4, at the request of the plaintiffs, all predicated upon the theory of the existence of a warranty, express in No. 1, implied in No. 4 and undefined in the others.

The judgment, clearly erroneous, will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*